# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**JAMES ARTHUR SHARKEY**                                                              **PLAINTIFF**

**V.**                                                                           **NO. 4:18-CV-17-DMB-JMV**

**HUMPHREYS COUNTY, MISSISSIPPI;**
et al.                                                                                **DEFENDANTS**

## ORDER

Before the Court is Sean Williams' second motion for summary judgment. Doc. #27.

## I
## Procedural History

On February 9, 2018, James Arthur Sharkey, with the assistance of counsel, filed a complaint in the United States District Court for the Northern District of Mississippi against (1) Humphreys County, Mississippi; (2) J.D. Roseman, in his individual capacity and official capacity as sheriff of Humphreys County; and (3) Sean Williams, in his individual capacity and official capacity as deputy sheriff of Humphreys County. Doc. #1. The complaint asserts state and federal claims based on allegations of an unlawful arrest of Sharkey by Williams which included the use of excessive force. *Id*. at 2–5. The defendants jointly answered the complaint on March 5, 2018. Doc. #8.

On April 9, 2018, Williams, asserting the defense of qualified immunity, filed a motion seeking summary judgment on the claims brought against him in his individual capacity. Doc. #12. That day, United States Magistrate Judge Jane M. Virden stayed the case pending a decision on the summary judgment motion. Doc. #14. Three days later, Sharkey's counsel moved to withdraw due to "a fundamental difference between himself and … Sharkey." Doc. #15.

After Sharkey's counsel was granted leave to withdraw, Judge Virden directed Sharkey to

inform the Court whether he intended to proceed pro se. Doc. #21. On or about July 11, 2018, Sharkey filed a document dated July 6, 2018, which both stated that he is proceeding pro se and appeared to respond to Williams' summary judgment motion with medical records and a series of unsworn declarations prepared by himself and three alleged witnesses to his arrest—Dorothy Kersh (Sharkey's sister), Eddie Earl Smith (Sharkey's brother), and Charles Sharkey (Sharkey's brother). Docs. #22, #22-1. On October 1, 2018, the Court granted Sharkey leave to file a formal response to the motion for summary judgment. Doc. #23. Sharkey did not file a formal response.

On March 25, 2019, the Court, noting that Williams did not challenge the admissibility of the unsworn declarations, found the facts in the declarations created genuine issues of material fact. Doc. #26. However, because Sharkey submitted the documents prior to having been granted leave to do so and because the nature of the documents were unclear, the Court declined to consider the documents before giving Williams an opportunity to lodge an objection to their admissibility. *Id*. at 6–7. Accordingly, the Court denied the motion for summary judgment without prejudice. *Id*. at 7.

Williams filed a second motion for summary judgment on April 8, 2019. Doc. #27. In seeking summary judgment, Williams specifically challenges the admissibility of the unsworn declarations. Doc. #28 at 10. Sharkey filed an untimely response to the motion for summary judgment on April 29, 2019. Doc. #29. Williams filed an untimely reply on May 13, 2019.[1] Doc. #31.

**II**
**Summary Judgment Standard**

A court may enter summary judgment if "there is no genuine dispute as to any material fact

---

[1] Because both the response and reply were untimely filed, the Court, in the interest of resolving the case on the merits, exercises its discretion and considers both documents.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Id*. (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (quoting *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (alterations omitted).

### III
### Unsworn Declarations

Federal Rule of Civil Procedure 56(c) "permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial." *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). "In other words, the party submitting the material must be able to demonstrate how it will be possible to introduce the content or substance of the material at trial." 11 MOORE'S FEDERAL PRACTICE - CIVIL § 56.91.[2] This is so because "[i]f the substance cannot be put into an admissible form, the material can have no bearing on whether a trial is necessary, which is the ultimate determination to be made by the court in ruling on a motion for summary judgment." *Id*. Where a party objects to summary

---

[2] The Fifth Circuit, in setting forth the approach for considering unsworn declarations at the summary judgment stage, has looked to MOORE'S FEDERAL PRACTICE. *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). In the absence of controlling authority on this issue, the Court will as well.

judgment evidence, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

In his motion for summary judgment, Williams argues that "Sharkey cannot show that the[] statements [in the unsworn declarations] could be offered in a form admissible at trial." Doc. #28 at 10. Specifically, Williams contends he "has no reason to believe that the statements were actually written by the alleged signatories."[3] *Id*. Sharkey, in his response, states that he intends "to reserve the unsworn testimony for trial purposes." Doc. #29 at 2.

In considering the expected admissibility of a hearsay statement, such as an unsworn declaration introduced for the truth of the matter asserted,[4] a "court should be free to ask the plaintiff what reason she has for believing that [the declarant] will in fact be available to testify at trial [and the] reasons for not obtaining sworn statements or sworn testimony from [the declarant] at this time." 11 MOORE'S FEDERAL PRACTICE - CIVIL § 56.91. "Depending on the circumstances, the failure to secure sworn statements at the summary-judgment stage—or to confirm that the witnesses can and will testify as expected later—can significantly undercut the claim that the statements actually can be presented in an admissible form at trial." *Id*.

This Court directed Sharkey "to submit an affidavit or a statement executed under penalty of perjury stating (1) why he believes each declarant will testify to the facts included in the unsworn declarations; and (2) why he is unable to obtain a sworn statement from the declarants." Doc. #37 at 5. Sharkey did not respond to the Court's direction.

---

[3] Williams offers additional arguments regarding the potential admissibility of the documents themselves rather than their substance. There is, however, no question that the documents as proffered would be inadmissible. The issue is whether the substance of the documents, specifically the statements regarding the events in question, could be presented in an admissible form.

[4] *See* Fed. R. Evid. 801.

Given that three of the declarants appear to be related to Sharkey, and that the other declarant is Sharkey himself, Sharkey's failure to provide a reason for the absence of the sworn statements is a strong indication that the declarants would not testify to the contents of their declarations. *See* 11 MOORE'S FEDERAL PRACTICE - CIVIL § 56.91 ("It might be one thing if [the declarants] are currently out of the country (but expected to return) or if they declined to submit affidavits because they still work for the [defendant] employer and do not wish to get involved. It might be another thing if [the declarants] have been in the area the whole time but the plaintiff simply chose not to bother with contacting them."). In the absence of any other indication that the declarants would testify to the contents of their statements at trial, the Court concludes that the unsworn declarations are inadmissible for the purpose of deciding the summary judgment motion.

## IV
## Factual Background

At approximately 1:28 a.m. on February 14, 2015, Sean Williams, a deputy with the Sheriff's Department of Humphreys County, Mississippi, was dispatched to a residence in Belzoni, Mississippi. Doc. #27-5 at ¶¶ 1–2. The dispatcher informed Williams that a 911 call had been made stating that James Sharkey "was acting out of control and the family could not calm him down." *Id.* at ¶ 2. Williams traveled to the residence, which belonged to Sharkey's mother, Hattie Smith. *Id.* at ¶ 3.

When Williams arrived, he observed Sharkey outside the residence acting "erratic" and "angry," and threatening his family. *Id.* Smith stated that she did not want Sharkey staying at her home "while this behavior continued." *Id.* Sharkey repeatedly said that his mother refused to give him money for drugs. *Id.* About this time, Dexter McPherson, a police officer in Belzoni, arrived at the scene. *See* Doc. #27-6 at ¶¶ 1–3.

Williams informed Sharkey "that he would have to calm down." Doc. #27-5 at ¶ 4. When

Sharkey did not calm down, Williams and McPherson "attempted to stabilize the situation" by taking Sharkey to a bedroom in the home. *Id.* at ¶¶ 4–5. In the bedroom, Williams informed Sharkey that if he did not calm down, he would be taken to jail. *Id.* at ¶ 5. When Sharkey continued to yell, Williams ordered Sharkey to put his hands behind his back. *Id.* Sharkey then punched Williams in the face. *Id.* at ¶ 5. Williams struck Sharkey back. Doc. #27-6 at ¶ 6. Williams and McPherson then attempted to restrain Sharkey, who "was combative and struggling." *Id.* Ultimately, Sharkey was arrested and taken to the Humphreys County jail. *Id.* Both Williams and McPherson believed that Sharkey was under the influence of drugs. Doc. #27-5 at ¶ 3; Doc. #27-6 at ¶ 3.

# V
## Analysis

Sharkey's complaint asserts three claims: (1) "Violation of 42 U.S.C. Section 1983: Arrest and Detention," (Count One); (2) intentional infliction of emotional distress (Count Two); and (3) negligence (Count Three). Doc. #1 at 3–5. Williams seeks summary judgment on all claims. Doc. #27.

### A. Count One

Count One alleges that, as a result of Williams' actions, Sharkey "was deprived of his liberty in violation of his Fifth and Fourteenth Amendment rights and suffered a significant assault …." Doc. #1 at 3–4. Williams contends that Count One asserts two constitutional claims, one for excessive force and one for false arrest, and that he is entitled to qualified immunity on both claims because there was no constitutional violation and, even if there was, his actions towards Sharkey were reasonable in light of clearly established law. Doc. #28 at 6–16.

"Government officials are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established

at the time." *Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) (cleaned up). Once properly invoked,[5] the defense of qualified immunity requires the plaintiff to prove the inapplicability of the doctrine. *Id*.

### 1. *False Arrest*

Absent circumstances inapplicable here, the Fourth Amendment[6] prohibits the seizure of a person in the absence of probable cause. U.S. Const. amend. IV. Accordingly, "[a] constitutional claim for false arrest … requires a showing of no probable cause." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). Probable cause exists when "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] that the suspect has committed, is committing, or is about to commit an offense." *Id*.

Here, Williams argues that, based on Sharkey's erratic behavior and threats toward his family, and later his refusal to place his hands behind his back, he had probable cause to believe that Sharkey had committed the offense of disturbing the peace. Doc. #28 at 6–7. Williams also contends that, after Sharkey punched him, he had probable cause to arrest Sharkey for aggravated assault. *Id*. However, because Williams concedes that "Sharkey was under arrest when Officer Williams instructed him to put his hands behind his back,"[7] the Court will confine its analysis to Sharkey's actions before that point.

Mississippi law provides:

> Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or

---

[5] To invoke the defense of qualified immunity in connection with an arrest, a police officer must plead his good faith and establish "that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir 1982). This standard is satisfied where, as here, the defense has been raised in the pleadings, and there is no dispute the defendant officer was acting within his discretionary authority. *Id*. at 1164.

[6] The Court presumes the complaint's reference to the Fifth Amendment was in error.

[7] Doc. #28 at 8.

7

language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail not more than six (6) months, or both.

Miss. Code Ann. § 97-35-15. While the use of indecent or profane language alone does not rise to the level of disturbance of the peace, words must be considered in light of the defendant's "conduct, behavior and demeanor." *Odem v. State*, 881 So. 2d 940, 946 (Miss. Ct. App. 2004).[8]

The undisputed evidence here shows that at the time of the Sharkey's arrest, Williams (1) had been informed of a 911 call from Sharkey's family that Sharkey was "acting out of control" and could not be calmed down; (2) observed Sharkey act in an "angry" and "erratic" fashion on the front lawn of his mother's residence; (3) heard Sharkey threaten his family members; and (4) observed Sharkey repeatedly state that his mother refused to buy him drugs. Under these circumstances, there is no question that Williams had probable cause to believe Sharkey had disturbed the peace of others (his family) through his boisterous conduct. Because there was probable cause to arrest Sharkey, Sharkey's false arrest claim must fail.

### 2. *Excessive Force*

"The Fourth Amendment creates a right to be free from excessive force during a seizure." *Trammell v. Fruge*, 868 F.3d 332, 339–40 (5th Cir. 2017) (quotation marks omitted). This right is violated when a plaintiff suffers an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id*. at 340. Williams argues that the force he used was reasonable under the circumstances and, therefore, was not excessive. Doc. #28 at 9–16.

---

[8] *Odem* involved the interpretation of different disturbing-the-peace statutes. However, the Court finds the description of the proper scope of inquiry persuasive. *See generally Taylor v. State*, 396 So. 2d 39, 41–42 (Miss. 1981) (analyzing in a single inquiry alleged violations of Mississippi's various disturbing-the-peace statutes).

8

The reasonableness of a use of force depends on "the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Trammell*, 868 F.3d at 340 (quotation marks omitted).

Under the first factor, the crimes at issue are those crimes "that there was probable cause to believe" had been committed. *Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018). As explained above, at the time Williams struck Sharkey, Williams had probable cause to believe Sharkey had committed the crime of disturbing the peace. Additionally, based on Sharkey punching Williams, Williams had probable cause to believe Sharkey had committed simple assault on a police officer, a felony.[9] Assault is a serious crime that weighs against a finding of excessive force. *See generally Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) ("Though driving while intoxicated is a serious offense, it does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault."). Similarly, based on Sharkey's assault on Williams, there can be no serious dispute that Sharkey posed an immediate threat to officer safety. Finally, the undisputed evidence shows that Sharkey was actively resisting arrest.

In light of the above factors, the Court concludes there is no genuine issue of material fact that the force used by Williams—a single punch followed by attempts to restrain Sharkey—was reasonable. *See generally Brax v. City of Grand Rapids*, 742 F. App'x 952, 957 (6th Cir. 2018) ("In light of the tense, uncertain, and rapidly evolving circumstances that Beracy faced, we cannot say that his split-second judgment that a single punch was necessary to subdue a drunk, strong,

---

[9] *See* Miss. Code Ann. § 97-3-7(1)(b).

and resisting young Brax was unreasonable."). Even if such force could be deemed excessive, Sharkey has identified no clearly established law which would have placed Williams on notice that his conduct was unlawful. Accordingly, Williams is entitled to summary judgment on Sharkey's excessive force claim.

### B. Count Two and Count Three

Sharkey's remaining claims against Williams are state law claims for intentional infliction of emotional distress and negligence. *See* Doc. #1 at 4. Williams argues these claims are barred by the Mississippi Tort Claims Act ("MTCA"). Doc. #28 at 17.

As a general rule, "[t]he MTCA is the exclusive remedy against a governmental entity or employee pursuant to its specific terms." *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Rentfro*, 853 F.3d 750, 753 (5th Cir. 2017). Pursuant to the MTCA, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2). However, when an employee does not act within the course and scope of his duties, the MTCA does not apply. *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 81 (Miss. 2017).

> "Course of employment" is defined as "events that occur or circumstances that exist as part of one's employment; esp., the time during which an employee furthers an employer's goals through employer-mandated directives. "Scope of employment" is defined as "the range of reasonable and foreseeable activities that an employee engages in while carrying out the employer's business."

*Meeks v. Miller*, 956 So. 2d 864, 867 (Miss. 2007) (cleaned up). Furthermore, under the MTCA, "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." Miss. Code Ann. § 11–46–7(2). In the absence of such conduct, "the

10

decisions to arrest, detain and charge [are] undertaken in the course and scope of … employment as police officers ….” *Alford v. City of Wiggins*, No. 1:16-cv-19, 2017 WL 923406, at *7 (S.D. Miss. Mar. 8, 2017).

There is no evidence that Williams' acts in subduing and arresting Sharkey constituted fraud, malice, libel, slander, defamation, or was otherwise criminal. Accordingly, there is no genuine issue of material fact that Williams' acts were in the course and scope of his employment. Therefore, under the MTCA, Williams is immune from liability and Sharkey's state law claims must fail.

## VI
## Conclusion

Williams' second motion for summary judgment [27] is **GRANTED**. Sharkey's claims against Williams in his individual capacity are **DISMISSED with prejudice**.

**SO ORDERED**, this 8th day of January, 2020.

                                              /s/Debra M. Brown
                                              **UNITED STATES DISTRICT JUDGE**