IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JAMES ARTHUR SHARKEY**                                                            **PLAINTIFF**

**VS.**                        **CIVIL ACTION NO.: 4:18-CV-00017-JMV**

**HUMPHREYS COUNTY, MISSISSIPPI** *et al*.                         **DEFENDANTS**

**ORDER AND MEMORANDUM OPINION**

This matter is before the court on the motion of defendants Humphreys County, Sherriff J.D. Roseman and Deputy Sean Williams, in their official capacities, and Sherriff Roseman, in his individual capacity ("defendants"). Defendants seek summary judgment on all remaining claims of the *pro se* plaintiff, James Arthur Sharkey. For the reasons discussed below the motion is granted.

**I.**     **Procedural History**

On February 9, 2018 plaintiff, James Sharkey, then with the assistance of counsel,[1] filed a complaint in this court against Humphreys County, Mississippi, J.D. Roseman, in his individual capacity and official capacity as the sheriff of Humphreys County, and Sean Williams, in his individual capacity and official capacity as a deputy sheriff of Humphreys County. Doc. #1. Though less than a model of drafting,[2] the complaint purports to assert state law claims for

---

[1] Plaintiff was originally represented by counsel, Boyd Atkinson, who withdrew from representation on April 30, 2018. Plaintiff has appeared *pro se* since that date.
[2] For example, the undersigned, as did the district judge originally assigned this case, presumes counsel made a misstatement in referencing the Fifth Amendment rather than the Fourth amendment as concerns plaintiff's alleged arrest-related constitutional violations. And, while naming the county and the sheriff as defendants, the complaint drafted by counsel is void of any reference to a policy or custom of the county underlying the alleged constitutional violations complained of, or of any conduct of the sheriff other than a vague negligent failure, under state law, to properly supervise the deputy.

1

negligence and intentional infliction of emotional distress and federal claims, pursuant to 42 U.S.C.A. § 1983, based on allegations of an alleged unlawful arrest and the alleged use of excessive force in violation of plaintiff's constitutional rights.

On January 8, 2020, defendant, Deputy Sean Williams, in his individual capacity, sought summary judgment on the grounds of qualified immunity. Following briefing, the district judge assigned the case[3] ultimately granted his defense motion. In relevant part her opinion reads:

II.     **Factual Background**

At approximately 1:28 a.m. on February 14, 2015, Sean Williams, a deputy with the Sheriff's Department of Humphreys County, Mississippi, was dispatched to a residence in Belzoni, Mississippi. Doc. #27-5 at ¶¶ 1–2. The dispatcher informed Williams that a 911 call had been made stating that James Sharkey "was acting out of control and the family could not calm him down." *Id*. at ¶ 2. Williams traveled to the residence, which belonged to Sharkey's mother, Hattie Smith. *Id*. at ¶ 3.

When Williams arrived, he observed Sharkey outside the residence acting "erratic" and "angry," and threatening his family. *Id*. Smith stated that she did not want Sharkey staying at her home "while this behavior continued." *Id*. Sharkey repeatedly said that his mother refused to give him money for drugs. *Id*. About this time, Dexter McPherson, a police officer in Belzoni, arrived at the scene. *See* Doc. #27-6 at ¶¶ 1–3.

Williams informed Sharkey "that he would have to calm down." Doc. #27-5 at ¶ 4. When Sharkey did not calm down, Williams and McPherson "attempted to stabilize the situation" by taking Sharkey to a bedroom in the home. *Id*. at ¶¶ 4–5. In the bedroom, Williams informed Sharkey that if he did not calm down, he would be taken to jail. *Id*. at ¶ 5. When Sharkey continued to yell, Williams ordered Sharkey to put his hands behind his back. *Id*. Sharkey then punched Williams in the face. *Id*. at ¶ 5. Williams struck Sharkey back. Doc. #27-6 at ¶ 6. Williams and McPherson then attempted to restrain Sharkey, who "was combative and struggling." *Id*. Ultimately, Sharkey was arrested and taken to the Humphreys County jail. *Id*. Both Williams and McPherson believed that Sharkey was under the influence of drugs. Doc. #27-5 at ¶ 3; Doc. #27-6 at ¶ 3.

….

*1. False Arrest*

… "[a] constitutional claim for false arrest… requires a showing of no probable cause.' *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). Probable

---

[3] This case was originally assigned to the Honorable District Judge Debra Brown. On January 29, 2020, with the approval of the district judge and the consent of the parties, the case was reassigned pursuant to 28 U.S.C.A. § 636(c) to the undersigned magistrate.

cause exists when "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] that the suspect has committed, is committing, or is about to commit an offense." *Id.*

….

The undisputed evidence here shows that at the time of the Sharkey's arrest, Williams (1) had been informed of a 911 call from Sharkey's family that Sharkey was "acting out of control" and could not be calmed down; (2) observed Sharkey act in an "angry" and "erratic" fashion on the front lawn of his mother's residence; (3) heard Sharkey threaten his family members; and (4) observed Sharkey repeatedly state that his mother refused to buy him drugs. Under these circumstances, there is no question that Williams had probable cause to believe Sharkey had disturbed the peace of others (his family) through his boisterous conduct. Because there was probable cause to arrest Sharkey, Sharkey's false arrest claim must fail.

### 2. Excessive Force

… This right is violated when a plaintiff suffers an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id*. at 340. Williams argues that the force he used was reasonable under the circumstances and, therefore, was not excessive. Doc. #28 at 9-16.

The reasonableness of a use of force depends on "the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Trammell*, 868 F.3d at 340 (quotation marks omitted).

Under the first factor, the crimes at issue are those crimes "that there was probable cause to believe" had been committed. *Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018). As explained above, at the time Williams struck Sharkey, Williams had probable cause to believe Sharkey had committed the crime of disturbing the peace. Additionally, based on Sharkey punching Williams, Williams had probable cause to believe Sharkey had committed simple assault on a police officer, a felony. Assault is a serious crime that weighs against a finding of excessive force. *See generally Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) ("Though driving while intoxicated is a serious offense, it does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault."). Similarly, based on Sharkey's assault on Williams, there can be no serious dispute that Sharkey posed an immediate threat to officer safety. Finally, the undisputed evidence shows that Sharkey was actively resisting arrest.

In light of the above factors, the Court concludes there is no genuine issue of material fact that the force used by Williams—a single punch followed by attempts to restrain Sharkey—was reasonable. *See generally Brax v. City of Grand Rapids*, 742 F. App'x 952, 957 (6th Cir. 2018)…. Even if such force could be deemed excessive, Sharkey has identified no clearly established law which would have placed Williams on notice that his conduct was unlawful.

3

….

Doc. #38.

### III. Analysis of Constitutional Violations Against Official Capacity Defendants[4] and Defendant Roseman, Individually.

#### A. The Law

In the Fifth Circuit, a municipality is not liable where there has been no finding that its employee committed a constitutional violation. *See Alpha v. Hooper,* 440 F.3d 670, 672 (5th Cir. 2006) (upholding summary judgment for the defendant county because the defendant officer, who shot and killed the plaintiff, did not use excessive force); *Malbrough v. Stelly*, No. 19-30269, 2020 WL 2507355, at *7 n. 15 (5th Cir. May 14, 2020) ("[B]ecause Malbrough failed to establish a constitutional violation, the city and the sheriff are not liable under *Monell*. A municipality cannot be held liable when its employee did not violate the Constitution."); *see also Mace v. City of Palestine,* 333 F.3d 621, 625 (5th Cir. 2003); *Thomas v. Murray,* 251 F.3d 156 (5th Cir. 2001) (holding that, because defendant police officer did not use excessive force or unlawfully detain the plaintiff, the defendant county was entitled to summary judgment); s*ee also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 426 n. 11 (5th Cir. 2006) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (municipality is only liable if it had a policy or custom, including failing to train its employees, and that policy, custom or failure to train caused

---

[4] Claims against officers in their official capacity are essentially duplicates of the claims against the governmental entity. *Estate of Manus v. Webster Cty., Miss.*, No. 1:11-CV-00149-SA-DAS, 2014 WL 1285946, at *2 (N.D. Miss. Mar. 31, 2014), *rev'd in part on reconsideration on other grounds*, No. 1:11-CV-00149-SA-DAS, 2014 WL 2207851 (N.D. Miss. May 28, 2014), and *opinion clarified*, No. 1:11-CV-00149-SA-DAS, 2014 WL 3866577 (N.D. Miss. Aug. 6, 2014) (quoting *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n. 55, (1978)) ("Unlike suits against officers in their personal capacities, suits brought against officers in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *see also Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (holding that district court did not err in dismissing allegations against municipal officers in their official capacities because said allegations "duplicate claims against the respective governmental entities themselves."). Since Humphreys County is a named party, the official-capacity claims against the sheriff and deputy are superfluous and properly dismissed on this basis alone.

the constitutional violation)*; Carnaby v. City of Houston*, No. 4:08-CV-1366, 2009 WL 7806964, at *7 (S.D. Tex. Oct. 28, 2009) (holding that because the officer's use of force was reasonable, and therefore not in violation of the Fourth Amendment, it follows that the municipality is also not liable for the use of force or its failure to properly train the officer.); *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 733 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69, 202 L. Ed. 2d 23 (2018) ("Because it held that the officers did not violate Darden's constitutional rights, the district court likewise held that the City could not be liable and granted the City's motion for summary judgment.").

Finally, as concerns a supervising officer's liability (individually) for a constitutional violation at the hands of his subordinate officer, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) (quoting *Evett v. DETNTFF,* 330 F.3d 681, 689 (5th Cir. 2003)). As is the case where the claim is against the municipality, "[i]t is facially evident that this test cannot be met if there is no underlying constitutional violation." *Id.* (citing *Breaux v. City of Garland,* 205 F.3d 150, 161 (5th Cir. 2000)).

*B. New Evidence*

In the instant case, the only evidence offered by plaintiff, that was not before the court when it held that plaintiff's constitutional rights had not been violated, are two sworn statements, which read as follows:

5

January 13, 2020

From: Dorothy J. Kersh

To: Whom This May Concern

On February 14, 2015, my brother James Sharkey became very upset about my turning the light off in the dining room several times. I don't like being a total dark room so James started yelling and he got up in my face. My mom and I thought that he might hit me so mom told me to call 911 so I did. My mom thought that it might calm James down by asking me to call 911 but she also did not think that I would call 911 either so when the officers arrived to the house, they proceeded to arrest James without reading him his rights and so at that time, James backed up against the wall in his bedroom and both officers threw him down on the bed and one of the officers put his knee on James' back and neck with his face pinned down on the mattress as if he was trying to smother James. Then the officers took him into custody that night and wrote up an incident report which included a bunch of lies and misspelled words which made them look even more incompetent. I am also stating that James has never caused any of us (his family) any harm ever. As a matter of fact, James was one of my mother's caregivers and all the above is the truth so help me God. If you have any questions or would like to contact me via phone, please call 601-937-1252 or email me @ dorothykersh@yahoo.com. I will be glad to assist you.

Thanks,

*Dorothy Kersh*
Dorothy J. Kersh

Subscribed sworn to and acknowledge before me  WBS  on
this Date 01-13-2020

Subscribed and sworn to before me in my presence, this 13th day of January 2020, a Notary Public in and for the County of Rankin, State of MS

*Will*
(Signature)      Notary Public

My Commission Expires 7/17/2023

[Notary Seal: STATE OF MISSISSIPPI NOTARY PUBLIC ID # 136186 WILLIAM B. SIMMONS Commission Expires July 17, 2023 MADISON COUNTY]

6

Doc. #59 at 3.

Eddie Smith
P.O. Box 371
Belzoni, MS 39038

On the 14 February 2015, officer came to my resident. The call concern James Sharkey and Dorothy Sharkey about a light. James wanted off and Dorothy wanted on. When officer came over James went to his room. The officer followed him to his room where Cora Reed were. Cora stated to my mother come see about your son. I walked by James room, I seen officer had him down on the bed with his knee in his back and neck.

*Eddie Smith* (signature)

Subscribed and sworn to before me in my presence, this 21 day of Jan 2020, a Notary Public in and for the County of Humphreys State of MS

*Damion Collum* (signature)
(Signature)          Notary Pubic
My Commission Expires 12 July, 20 22

[Notary seal: STATE OF MISSISSIPPI, ID # 124874, DAMION COLLUM, Commission Expires July 12, 2022, HUMPHREYS COUNTY]

Doc. #59 at 4.

*C. The Issue*

Viewing the evidence in the light most favorable to the non-movant—plaintiff—as the court is required to do on motion for summary judgment, *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012), the issue before the undersigned is whether the sworn statements undermine

7

the district judge's prior conclusion that there is no genuine issue of material fact but that plaintiff was arrested with probable cause and without the use of excessive force.

### D. The Holding

Upon careful examination of the foregoing statements and the factual bases offered to support the court's previous findings, the undersigned finds any facts purported to be set forth in the sworn statements simply do not undermine the court's stated rationale for concluding that plaintiff's constitutional rights were not violated.

In short, as for arrest without probable cause, the statements do not individually or collectively, dispute the facts cited by the court to support a finding of probable cause—namely that Deputy Williams (1) had been "informed of a 911 call from plaintiff's family that Sharkey was "acting out of control" and could not be calmed down; (2) observed Sharkey act in an "angry" and "erratic" fashion on the front lawn of his mother's residence; (3) heard Sharkey threaten his family members; and (4) observed Sharkey repeatedly state that his mother refused to buy him drugs." Doc. #38 at 8.

Similarly, as for the finding of no excessive force, the statements do not individually or collectively dispute the findings cited by the court—namely, that:

> At the time Williams struck Sharkey, Williams had probable cause to believe Sharkey had committed the crime of disturbing the peace. Additionally, based on Sharkey punching Williams, Williams had probable cause to believe Sharkey had committed simple assault on a police officer, a felony….
> Similarly, based on Sharkey's assault on Williams, there can be no serious dispute that Sharkey posed an immediate threat to officer safety. Finally, the undisputed evidence shows that Sharkey was actively resisting arrest.
> In light of the above factors, the Court concludes there is no genuine issue of material fact that the force used by Williams—a single punch followed by attempts to restrain Sharkey—was reasonable.

Doc. #38 at 9.

In as much as the sworn statements do not undermine the court's prior holding that plaintiff's constitutional rights were not violated, no liability, as a matter of law, may be imposed against Humphrey's County or any remaining defendant pursuant to 42 U.S.C.A. § 1983, in their official or individual capacities.

**IV. Analysis of the State Law Claims**

Plaintiff's state-law claims against the defendants herein are subject to and barred by the protections, limitations, and immunities of the Mississippi Tort Claims Act ("MTCA"). Mississippi law provides that "a governmental entity and its employees acting within the course and scope of their employment shall not be liable for any claim:… [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]" *See* Miss. Code Ann. § 11-46-9(1)(c). As previously found by the district judge, Deputy Williams was acting within the course and scope of his employment as a police officer when he lawfully arrested the plaintiff, who was in fact engaged in criminal activity—assault of a police officer—at the time of his arrest. Doc. # 38. Accordingly, these defendants are not liable for state-law claims related to the arrest, and such claims must be dismissed pursuant to Miss. Code Ann. § 11-46-9(1)(c).

Further, plaintiff's state-law claims are barred by the MTCA's statute of limitations and notice requirements. Mississippi law prescribes a one-year statute of limitations for actions against governmental entities. Miss. Code Ann. § 11-46-11(3)(a). Mississippi law also requires a plaintiff to file notice of his claim with the governmental entity at least ninety days before filing suit. Miss. Code Ann.§ 11-46-11(1)-(2). "[F]ailure to file within the time allowed is an absolute bar to any further proceedings under this chapter." Miss. Code Ann. § 11-46-11(3)(b). The incident occurred on February 13, 2015, and plaintiff filed his complaint on February 9, 2018. *See* Doc. #1. Further, plaintiff neither

9

gave appropriate notice nor filed suit within the authorized period. Therefore, plaintiff's MTCA claims must also be dismissed pursuant to the provisions of Miss. Code Ann. § 11-46-11.

### V. Conclusion

The motion of the defendants for summary judgment [46] is hereby **GRANTED**. Plaintiff's remaining claims against the defendants are **DISMISSED with prejudice**.

**SO ORDERED**, this the 13th day of July, 2020.

                                      /s/ Jane M. Virden
                                    UNITED STATES MAGISTRATE JUDGE

!